Nehrbas, J.
The defendants, by their answer, admit the second paragraph of the complaint, which is in the following words: "That for value received the defendant duly issued certain bonds, and among others, the forty bonds hereinafter mentioned of the par value of $500 each, which said bonds were severally duly signed and certified and attested, and the same were sold by the defendant for value.” These forty bonds, together with the coupons which had been previously detached therefrom, were produced on the trial by the plaintiff, who testified that he was the owner thereof. Nothing further was required of the plaintiff to establish a prima facie case on the unpaid interest coupons. As to the three first mortgage gold bonds of the defendant and the coupons cut therefrom and the thirty-two debenture coupon obligations of the defendant, they, also were produced on the trial and the plaintiff testified that they belonged to him, and that the coupons and obligations had been presented at the office of the defendants and a demand made of Mr. Raferty, defendants’ secretary and treasurer, whose name appears on the securities as such, who declined to pay the same, giving as a reason for such refusal that he desired plaintiff to exchange his securities for other bonds at a lower rate of interest, which plaintiff declined to do. This, we apprehend, was sufficient prima facie evidence to put defendants to their proof under the pleadings. Moreover, Mr. Raferty testified on behalf of the defendants that he was their secretary and treasurer.
The main contention on this appeal, however, arises upon the three first mortgage gold bonds, the defendants claiming that by reason of their tenor and the reference therein made to a mortgage or trust deed, the bonds were subject to the terms and conditions of such mortgage, whereby the plaintiff is precluded from a recovery upon the coupons detached therefrom, or, in other words, the interest upon the bonds.
We are referred to the case of McClelland v. Norfolk
*734 Southern R. R. Co. (3 N. Y. State Rep., 250) as decisive of this appeal and as conclusive against the plaintiff. This would be true if the bonds and mortgages in the two cases were similar, but they differ radically. The bonds offered in evidence by the plaintiff, in express terms, refer to a mortgage or trust deed given to secure them, and they further provide ‘'in case of default in the payment of said interest when due, continued for ninety days thereafter, the principal of this bond will thereby become due and payable upon and subject to all the conditions provided in the mortgage deed hereinafter mentioned.”
Under the McClelland Case the bonds, coupons and mortgage must be read together so that effect may be given to the whole. On examining the mortgage referred to, we find the provision that a majority in interest of the holders of the bonds may, by an instrument in writing, signed by such majority, and filed with the trustee, waive the right to consider the principal due by reason of such default, on such terms and conditions as such majority shall deem proper. It is true no such instrument in writing was ever signed or filed by a majority of such bondholders. But it appears that of the holders of the bonds (of which there were 2,500 at $1,000 each, aggregating $2,500,000), all except the owners of $107,000 thereof, or 107 bonds, had surrendered their securities to the trustee and had accepted in lieu thereof other bonds in accordance with a circular letter of the president of the defendant embodying a proposition to reduce the interest due, and to grow due, from six to five per cent per annum, and to execute a new first-mortgage in place of the one hereinbefore referred to, and payable at a later date, to secure the said bonds and raise the interest due thereon and to secure another indebtedness, aggregating $900,000, denominated the car trust obligations. The adoption of this scheme by a large majority practically amounts to a waiver of the right to consider the principal "due by reason of such default, especially as the trustee (who is the same in both mortgages) has consented thereto. But the default in the payment of the interest itself has not thereby been waived. There seems to be no-provision contained in the mortgage providing for the waiver postponement of the payment of the interest coupons.
Again, the mortgage provides the manner of procedure in case of default in the payment of the interest. Permission is given to the trustee to enter into possession of the-defendant’s property for the benefit of the bondholders, and upon a requisition by the bondholders of one-third of the total number - of bonds, he must make such entry and, if required, proceed to foreclose and sell upon proper reim *735 bursement for his charges. But this remedy is concurrent merely, and does not preclude an action upon the interest coupons, any more than any other ordinary debt of the corporation.
But a further provision is contained in the mortgage, in article tenth, as follows: “It is further expressly agreed and made binding upon each and every holder of bonds secured hereby, that no proceedings at law or in equity shall be taken by any bondholder to foreclose the equity of redemption under this instrument, or to procure a sale of the property covered thereby independently of the party of the second part, trustee, or its successors in said trust, except after a requisition shall have been made to said trustee as herein provided (made in writing by the holders of one-third in amount of the bonds secured then outstanding and unsatisfied), and also until after a refusal of the said trustee or neglect for sixty days to comply with such requisition according to the terms thereof.” It is claimed that this provision precludes the plaintiff from a recovery inasmuch as a sale of some of defendant’s property is necessarily involved as to the result of a judgment for the plaintiff.
This provision clearly refers to the defendant’s railroad property in its entirety, and not to the sale of any part thereof, otherwise it would have been so expressed. Moreover, the payment of the principal of the bonds seems to be the main object of this clause, and the default, so far as that principal is concerned, having been waived, the bondholders are debarred from proceeding at law or in equity for the collection of the face of the bonds. But it cannot be claimed that an action to recover the amount due on the interest coupons is thereby inhibited any more than the collection of an ordinary debt of the corporation, though it involves the sale by execution of a portion of the defendant’s property. It will, ordinarily, be presumed that the defendant has assets sufficient to satisfy its running expenses without a sale.
The provision referred to presents, therefore, no valid objection to the suit on the coupons.
In the McClelland Case the default in the payment of the interest was expressly waived in accordance with the terms of the mortgage which permitted such waiver. In the case at bar no provision is made for the waiver of the payment of interest, and the fact that nearly all the bondholders have acquiesced in the new arrangement cannot affect the plaintiff. He has no right, to be sure, to sue for the principal of his bonds because they are no longer due, the default making it payable immediately having been waived by the adoption by the majority of the new scheme. *736 But that does not involve the postponement of the payment of the accrued interest. There is nothing in the bond or mortgage to prevent the plaintiff from asserting his right to claim the amount due on the coupons, and the result reached in the McClelland Case is inapplicable here, as the mortgages are essentially different.
The question of interest on the coupons having been waived, nothing further remains to be considered.
The judgment will, therefore, be affirmed, with costs.
Browne, J., concurs.